## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JOHN THOMAS WATTERS,        )
                                        )

        Plaintiff,            )
                                        )

vs.                              )        Case No. 10-CV-270-GKF-PJC
                                        )

DEPARTMENT OF JUSTICE;        )
DEPARTMENT OF JUSTICE –     )
CRIMINAL DIVISION;          )
FEDERAL BUREAU OF INVESTIGATION;  )
EXECUTIVE OFFICE OF THE      )
UNITED STATES ATTORNEY;      )
DEPARTMENT OF THE TREASURY;   )
BUREAU OF ALCOHOL, TOBACCO,   )
FIREARMS, EXPLOSIVES;       )
INTERNAL REVENUE SERVICE,    )
                                        )

        Defendants.         )

## OPINION AND ORDER

On April 28, 2010, Plaintiff, a federal prisoner appearing *pro se*, filed a civil complaint (Dkt. # 1), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  By Order filed March 23, 2012 (Dkt. # 54), the Court granted Plaintiff's second motion to amend and directed the Clerk of Court to file Plaintiff's proposed second amended complaint.  On March 26, 2012, Plaintiff's second amended complaint (Dkt. # 55) was filed of record. On November 30, 2012, the federal defendants filed their second motion for summary judgment (Dkt. # 66). Plaintiff filed a response (Dkt. # 69) and a supporting brief (Dkt. # 70).  After noticing "multiple scrivener's errors" in his supporting brief, Plaintiff filed a motion to file a corrected brief (Dkt. # 71).  He also provided his proposed corrected brief.

As a preliminary matter, the Court shall grant Plaintiff's motion to file a corrected brief. His corrected brief in support of his response to Defendants' motion for summary judgment (Dkt. # 72) shall remain filed of record and shall be considered by the Court in resolving the issues herein.

Furthermore, for the reasons discussed below, Defendants' second motion for summary judgment shall be granted.

## BACKGROUND

### A. Plaintiff's claims

In his second amended complaint (Dkt. # 55), Plaintiff identifies two counts and alleges that Defendants violated the Freedom of Information Act (FOIA) and the Privacy Act (PA), 5 U.S.C. § 552, in failing to produce certain documents he had requested from the Criminal Division of the Department of Justice. Plaintiff states that he "brings this civil action for the purpose of compelling the Defendants to disclose to the Plaintiff his entire record of investigation for the years 2002 through and including 2007 as maintained within the system of records maintained by all named Defendants . . . ." Id. at 5. He further states that "said FOIA requests are in reference to Federal Criminal Case No. 05-CR-70-CVE and any and all other Federal, State, and local investigations concerning Watters, [Kenneth] Jones, [Michelle] Quisenberry, [Jerry] Harris and others to which the Defendants have knowledge and which concern Watters . . . ." Id. at 5-6. He claims that all defendants are in violation of FOIA for refusing to release documents relevant to John Watters and John Watters' case acknowledged to be in their possession. Id. at 7. In his request for relief, Plaintiff asks that the Court direct "each of the defendants to each disclose to the Plaintiff all above requested records which name or concern John Thomas Watters and associated persons between the

2

years 2002 and 2008." Id. at 8.  Plaintiff further asks that Defendants "pay the costs of this action, and for such other relief as the Court deems just in the premises." Id.

In seeking summary judgment, Defendants contend that the searches conducted by the various federal agencies were reasonably calculated to uncover all documents relevant to Plaintiff's FOIA requests. See Dkt. # 66. They also contend that documents withheld from disclosure to Plaintiff are protected by exemptions provided under FOIA. Id.  In response, Plaintiff challenges the adequacy of Defendants' searches and asserts that documents have been improperly withheld. See Dkt. # 72. Plaintiff claims there exists "an obvious significant public interest in making information available that will allow a wrongfully convicted +79 year old man to prove his innocence and be released from prison to reunite with his wife and children. The Government's wholesale classifications of barely described documents, records, files, and reports in unexplained broad categories does not meet the necessary showing for a grant of Summary Judgment." Id. at 22-23 (emphasis in original).

## B.  Summary of Uncontroverted Facts

1. Plaintiff is currently incarcerated by the Federal Bureau of Prisons pursuant to a judgment of conviction entered in N.D. Okla. Case No. 05-CR-070-CVE. He was convicted in that case by a jury of conspiracy to possess with the intent to distribute a controlled substance (1,000 or more marijuana plants), maintaining a drug involved premises, and felon in possession of firearms.  On May 26, 2006, Plaintiff was sentenced to 20 years imprisonment. See N.D. Okla. Case No. 05-CR-070-CVE.  Judgment was entered June 8, 2006. Id.

2. On June 26, 2007, the Tenth Circuit Court of Appeals affirmed Plaintiff's conviction on direct appeal. Id.

3

3.    On October 14, 2008, Plaintiff filed a 28 U.S.C. § 2255 motion to vacate, correct, or set aside sentence. Id. On July 16, 2009, Plaintiff's § 2255 motion was denied. Id.  He appealed and on February 2, 2010, the Tenth Circuit denied a certificate of appealability and dismissed the appeal. Id.

4.    By letter dated August 25, 2009, Plaintiff submitted a FOIA request to the Federal Bureau of Investigation (FBI).  See Dkt. # 38-2, Ex. A. Plaintiff requested all documents and records concerning himself, for the years 2002 to 2007, inclusive. Id. He also asked for information concerning the investigations of Michele Quisenberry (Harris), Kenneth Jones, and Jerry Harris.[1]  Id.

5.    By letter dated September 2, 2009, the FBI acknowledged receipt of a FOIA request from Plaintiff.  Dkt. # 38-2, Ex. B. By letter dated September 24, 2009, the FBI responded to Plaintiff's request, citing 5 U.S.C. § 552(b)(7)(A), and initially advised him that the requested records were found in an investigative file and were exempt from disclosure under 5 U.S.C. § 522(b)(7)(A), as the release of the records could reasonably be expected to interfere with enforcement proceedings. Dkt. # 38-2, Ex. C.

6.    Petitioner filed an administrative appeal to the Department of Justice, Office of Information Policy (OIP). See Dkt. # 38-2, Ex. D. On January 26, 2010, OIP affirmed the FBI's decision to withhold the investigative file in its entirety under 5 U.S.C. § 522(b)(7)(A).   See Dkt. # 38-2, Ex. G.

---

[1]Michele Quisenberry testified for the government at Plaintiff's criminal trial. See N.D. Okla. Case No. 05-CR-070-CVE, Dkt. # 57-1. Plaintiff claims that his farm property was leased to Kenneth Jones who "disappeared right before Plaintiff's arrest" and is a federal fugitive. See Dkt. # 72 at 22. Jerry Kent Harris was Plaintiff's co-defendant in N.D. Okla. Case No. 05-CR-070-CVE.

7.     Plaintiff commenced the instant civil action on April 28, 2010.  (Dkt. # 1).

8.     On January 10, 2011, under assigned FOIPA number 1136453-001, the FBI determined, upon further review, that certain records pertaining only to Plaintiff could be released. See Dkt. # 38-2, Ex. F.

9.     On February 23, 2011, Plaintiff appealed the FBI's resolution of his FOIA request. See Dkt. # 38-2, Ex. H. Plaintiff's appeal was assigned number AP-2011-01373.[2] See Dkt. # 38-2, Ex. I.

10.    By Declaration dated July 18, 2011, Dennis J. Argall, Assistant Section Chief in the Records Management Division of the FBI, provided detailed information concerning Plaintiff's request for records, the search conducted by the FBI, and the release of records sent to Plaintiff. That detailed information has been filed with the Court.  See Dkt. # 66-1, Ex. 1.

11.    According to Argall, the FBI processed 605 pages.  Of those 605 pages, 116 pages were released to Plaintiff in full and 128 pages were released in part. In addition, 148 pages were withheld in full. The FBI provided justification for redacting materials and for non-disclosure of materials. See Dkt. # 66-1 at ¶ 27.

12.    Argall also stated that the remaining 213 pages of the 605 processed pages originated with other governmental agencies and were referred by the FBI to those agencies for direct response to Plaintiff. See Dkt. # 66-1 at ¶¶ 27, 62. Those agencies included the Executive Office for United States Attorneys (EOUSA) (185 pages), the Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF) (16 pages), and the Internal Revenue Service (IRS) (12 pages). Id. at ¶ 27.

---

[2]The appeal was closed due to this litigation. See Dkt. # 66-1 at ¶ 16.

13.    In addition, Argall states that the FBI reviewed 682 pages of documents referred by EOUSA to the FBI for direct response to Plaintiff.  See id. at ¶ 28. Of those 682 pages, 217 were released in full, 220 pages were released in part, and 245 pages were withheld in full. Id. The FBI provided justification for redacting materials and for non-disclosure of materials. See id.

14.    As part of Defendants' first motion for summary judgment (Dkt. # 38), Argall provided the 1287 page release sent to Plaintiff. See Dkt. # 38-3 through 38-17, Ex. J. The first 605 pages processed by the FBI are Bates-stamped WATTERS-1 through WATTERS-605. See Dkt. # 66-1 at ¶ 27.  The 682 pages referred to the FBI by EOUSA are consecutively Bates-stamped WATTERS-606 through WATTERS-1287. See Dkt. # 66-1 at ¶ 28. "Deleted page sheets" were substituted for the pages withheld in full and for duplicate pages. Id. at ¶¶ 27, 28.  Exemptions relied on for withholding information are identified on the pages. Id.

15.    By Declaration dated September 25, 2012, John E. Cunningham, III, a trial attorney in the Department of Justice (DOJ)/Criminal Division (CRM), and assigned to the FOIA/PA Unit, provided detailed information concerning Plaintiff's request for records and the search conducted by DOJ/CRM.  See Dkt. # 66-2.

16.    Once Plaintiff perfected his requests, DOJ/CRM searched the appropriate records and found none responsive to Plaintiff's requests.[3] Id.

---

[3]Cunningham explains that it was not unusual to find no documents pertaining to Plaintiff in the search of DOJ/CRM records because Plaintiff was prosecuted by the United States Attorney's Office for the Northern District of Oklahoma, and not by the DOJ/CRM, See Dkt. # 66-2 at ¶ 21.

17.     By Declaration dated September 24, 2012, John F. Boseker, Attorney Advisor in the

        EOUSA, provided detailed information concerning Plaintiff's FOIA/PA requests directed

        to EOUSA. See Dkt. # 66-3.

18.     Boseker states that on November 4, 2009, EOUSA received a letter from Plaintiff seeking:

> any material concerning John Thomas Watters derived for the years
> 2002 to 2007 during the investigations of Michele Quisenberry
> (Harris), Kenneth Jones and Jerry Harris. Information sought includes
> but is not limited to exculpatory (Brady[4] materials) and investigation
> evidence (Jenks [sic] Act[5]). This is an all inclusive request and
> includes any document wherever located, in which the name of John
> Thomas Watters is made mention or listed including investigations
> of persons or business entities other than John Watters.

        See Dkt. # 66-3, Ex. A.  Plaintiff's letter was assigned FOIA No. 09-4040. See Dkt. # 66-3,

        Ex. B. Boseker also states that the documents referred to EOUSA by the FBI, see ¶ 12,

        above, were assigned FOIA No. 11-2-R, and were duplicates of documents processed by

        EOUSA as part of FOIA No. 09-4040.  See Dkt. # 66-3 at ¶ 17, n.1.

19.     After Plaintiff agreed to pay search and copy fees of $140.00, see Dkt. # 66-3, Ex. D, the

        United States Attorney's Office for the Northern District of Oklahoma (USAO/NDOK)

        searched for records responsive to Plaintiff's requests.  See Dkt. # 66-3 at ¶ 9.

20.     By letter dated April 28, 2011, EOUSA notified Plaintiff that records had been located in the

        USAO/NDOK and forwarded to EOUSA for review. Id. at ¶ 11.

---

[4]Brady v. Maryland, 373 U.S. 83 (1963)  (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

[5]Under the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b).

21.    In that same letter, EOUSA released to Plaintiff 225 pages of records in full and 155 pages with portions withheld. Plaintiff was also informed that 855 pages were withheld in full. See Dkt. # 66-3, Ex. E. Grand jury materials were withheld. Id.  The letter also advised Plaintiff of the exemptions relied on to withhold materials and that some documents had been referred to other agencies, including the FBI and the IRS, for review. Id.

22.    In that same letter, EOUSA reminded Plaintiff that he had agreed to pay up to $140.00 for search and copy costs, and advised that search and copy costs totaled only $112.00. Id. Plaintiff was told how and where to make payment and also advised of his appeal rights. Id.

23.    By letter dated May 9, 2011, Plaintiff advised EOUSA that he did not accept the decision to withhold documents requested pursuant to FOIA and requested that an appeal be taken. See Dkt. # 66-3, Ex. F.

24.    Plaintiff failed to pay the search and copy fees. Plaintiff also failed to perfect an administrative appeal of the EOUSA determinations prior to filing his amended complaint in this case.  See Dkt. # 66-3 at ¶ 18.

25.    By Declaration dated June 22, 2012, Peter J. Chisholm, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosive (ATF), provided a history of ATF's review of a referral of 16 documents received from the FBI.  See Dkt. # 66-4.

26.    On or about January 13, 2011, the ATF responded to Plaintiff and advised him that the 16 pages of documents were withheld pursuant to 5 U.S.C. § 552(b)(3). See Dkt. # 66-4 at ¶ 5.

27.    In addition, although ATF did not receive a separate FOIA request from Plaintiff, the agency conducted a search for records relevant to Plaintiff. Id. at ¶¶ 6, 20-22. Chisholm provides a

8

detailed explanation of the bases relied on by ATF for withholding records from disclosure. Id. at ¶¶ 7-19.

28.     By Declaration dated September 5, 2012, Carlton King, an attorney in the Office of Chief Counsel, Internal Revenue Service (IRS), provided a history of IRS's review of records referred by EOUSA and FBI. See Dkt. # 66-5.

29.     King states that all 58 pages of documents referred by EOUSA were released to Plaintiff. See Dkt. # 66-5 at ¶¶ 5, 6. In addition, King states that all 12 pages of documents referred by the FBI were released to Plaintiff.  Id. at ¶ 10.

## *ANALYSIS*

### A. Summary judgment standards

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material

fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994).

Cases filed pursuant to FOIA are frequently resolved by way of summary judgment. See Wickwire Gavin, P.C. v. U.S. Postal Serv., 356 F.3d 588, 591 (4th Cir. 2004); Ledbetter v. Internal Revenue Serv., 290 F. Supp. 2d 1232, 1235 (N.D. Okla. 2003). In a FOIA case, an agency may satisfy the summary judgment standard by showing that "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980) (quotation omitted). To demonstrate exemption from disclosure, a defendant may rely on affidavits or declarations and other evidence from the agency. Id. Summary judgment may be granted solely on the basis of signed affidavits if they are "sufficiently detailed and are submitted in good faith." Ledbetter, 290 F. Supp. 2d at 1235.

**B. Private cause of action under FOIA**

In Williams v. U.S. Attorney's Office, 2006 WL 717474 (N.D. Okla. 2006) (unpublished),[6] this Court provided the following summary of the relevant law governing FOIA claims:

> The FOIA was intended "to facilitate public access to Government documents." United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991). It "'reflect[s] a general philosophy of full agency disclosure[,]'" John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 360-61 (1976)), to "'ensure an informed citizenry, vital to the functioning of a democratic society.'" F.B.I. v. Abramson, 456 U.S. 615, 621 (1982) (quoting N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978)). Manna v. United States Dep't of Justice, 51 F.3d 1158, 1163 (3d Cir. 1995). "To achieve . . . [these] goal[s], the FOIA is designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Anderson v. Dep't of Health and Human Servs., 907 F.2d 936, 941 (10th Cir. 1990) (quoting Wren v. Harris, 675 F.2d

---

[6]This unpublished opinion is cited for persuasive value. See 10th Cir. R. 32.1(A).

1144, 1145 (10th Cir.1982) (quoting in turn <u>Rose</u>, 425 U.S. at 361)). The public's access, however, is not "'all-encompassing,'" for it is allowed "'only to information that sheds light upon the government's performance of its duties.'" <u>Sheet Metal Workers Local No. 9 v. United States Air Force</u>, 63 F.3d 994, 996 (10th Cir. 1995) (quoting <u>Hale v. United States Dep't of Justice</u>, 973 F.2d 894, 898 (10th Cir. 1992), <i>vacated on other grounds</i>, 509 U.S. 918 (1993)). "[T]he FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." <u>Kissinger v. Reporters Comm. for Freedom of the Press</u>, 445 U.S. 136, 151 (1980).

The FOIA, in part, obligates an agency to make "promptly available" records that are "reasonably describe[d]" in a request. 5 U.S.C. § 552(a)(3). A district court reviews <i>de novo</i> an agency's decision on an FOIA request. 5 U.S.C. § 552(a)(4)(B); <u>Jones v. F.B.I.</u>, 41 F.3d 238, 242 (6th Cir. 1994). "[T]he burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); <u>John Doe</u>, 493 U.S. at 152. To prevail on summary judgment in a FOIA case where full disclosure is claimed, the agency "'must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" <u>Steinberg v. United States Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting <u>Weisberg v. United States Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). The issue is not whether there might be more documents, <u>Kowalczyk v. Dep't of Justice</u>, 73 F.3d 386, 388 (D.C. Cir. 1996), but whether the search was adequate, <u>Steinberg</u>, 23 F.3d at 551. "'The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, non-conclusory affidavits submitted in good faith.'" <u>Steinberg</u>, 23 F.3d at 551 (quoting <u>Weisberg</u>, 745 F.2d at 1485); <u>see</u> <u>Kowalczyk</u>, 73 F.3d at 388. An agency's affidavits or declarations are "'accorded a presumption of good faith.'" <u>Carney v. United States Dep't of Justice</u>, 19 F.3d 807, 812 (2d Cir. 1994) (quoting <u>SafeCard Servs., Inc. v. S.E.C.</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Consequently, discovery on the agency's search "generally is unnecessary if the agency's submissions are adequate on their face." <u>Id.</u>

"To assess the adequacy of . . . [an agency's] search, we must first ascertain the scope of the request itself." <u>Nation Magazine, Washington Bureau v. United States Customs Serv.</u>, 71 F.3d 885, 889 (D.C. Cir. 1995); <u>see also</u> <u>Gillin v. I.R.S.</u>, 980 F.2d 819, 822 (1st Cir. 1992) ("The adequacy of an agency's search 'is measured by the reasonableness of the effort in light of the specific request.' <u>Meeropol v. Meese</u>, 790 F.2d 942, 956 (D.C. Cir. 1986)."). The requester must "reasonably describe[ ]" the records sought. 5 U.S.C. § 552(a)(3). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.'" <u>Kowalczyk</u>, 73 F.3d at 388 (quoting <u>Yeager v. Drug Enforcement Admin.</u>, 678 F.2d 315, 326 (D.C. Cir. 1982)). On the other hand, the "agency also

has a duty to construe a FOIA request liberally." <u>Nation Magazine</u>, 71 F.3d at 890 (citations omitted).

"To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." <u>Nation Magazine</u>, 71 F.3d at 890 (citation omitted). In short, the agency's affidavits or declarations must establish "that the agency has conducted a thorough search." <u>Carney</u>, 19 F.3d at 812; <u>see also</u> <u>Manna</u>, 51 F.3d at 1162-63. "The affidavits must be 'reasonably detailed ..., setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" <u>Nation Magazine</u>, 71 F.3d at 890 (quoting <u>Oglesby v. United States Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990)). "'If, . . . , the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.'" <u>Kowalczyk</u>, 73 F.3d at 388 (quoting <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)).

The FOIA does not provide a private right of action for monetary damages. <u>Thompson v. Walbran</u>, 990 F.2d 403, 405 (8th Cir. 1993); <u>Soghomonian v. United States</u>, 82 F. Supp. 2d 1134, 1147 n.9 (E.D. Cal. 1999); <u>Gasparutti v. United States</u>, 22 F. Supp. 2d 1114 (C.D. Cal. 1998); <u>Daniels v. St. Louis VA Reg'l Office</u>, 561 F. Supp. 250, 251 (E.D. Mo. 1983); <u>Diamond v. FBI</u>, 532 F. Supp. 216, 233 (S.D. N.Y. 1981), <i>aff'd</i>, 707 F.2d 75 (2d Cir. 1983). Instead, the remedy under FOIA is limited to "enjoin[ing] the agency from withholding agency records and to order[ing] the production of any agency records improperly withheld from the complainant." <u>Coolman v. I.R.S.</u>, 1999 WL 675319, at *7 (W.D. Mo. 1999) (quoting 5 U.S.C. § 552(a)(4)(B)).

<u>Williams</u>, 2006 WL 717474 at *3-*4.

## C. Defendants are entitled to summary judgment

Plaintiff's claims in this case reflect a misunderstanding of the scope of an agency's obligations. According to the Declaration of Dennis J. Argall (Dkt.# 66-1, Ex. 1), in response to Plaintiff's FOIA request for records, the FBI conducted a search of the automated indices to the Central Records System maintained by the FBI. The Declaration is reasonably detailed and sets forth the type of search performed. In addition, the Declarations provided by the other federal defendants describe in reasonable detail the searches performed by those agencies. <u>See</u> Dkt. #s 66-2, 66-3, 66-4, and 66-5. For the reasons discussed below, the Court finds that the searches undertaken

by Defendants were adequate, in light of the scope of Plaintiff's request, and documents were lawfully withheld or redacted pursuant to FOIA exemptions.

### 1. Preliminary considerations

The Court previously denied Plaintiff's motion for *in camera* review of withheld documents but also stated that "[s]hould the Court later determine that *in camera* review is necessary, an appropriate order will be entered." See Dkt. # 45.  Because Defendants have described with reasonable specificity the bases for withholding documents under the FOIA exemptions and there is no evidence in the record of agency bad faith, the Court finds no reason to revisit its prior ruling. See Hull v. I.R.S., 656 F.3d 1174, 1196 (10th Cir. 2011).

In addition, Plaintiff does not challenge Defendant EOUSA's assertion that he failed to exhaust administrative remedies and failed to pay search and copy costs associated with his FOIA request prior to filing his second amended complaint in this case.  Although those failures may not deprive the Court of jurisdiction to consider Plaintiff's claims, see Hull, 656 F.3d at 1181-82, Plaintiff's failure to perfect an administrative appeal from the determinations by Defendant EOUSA prevents this Court from considering relief based on "prudential considerations." Id.  Plaintiff has offered no explanation for his failure to perfect an administrative appeal.[7] The Court recognizes that Plaintiff sent a letter to EOUSA stating "I request an appeal be taken from this decision dated April 28, 2011," see Dkt. # 66-3, Ex. F; however, nothing in the record suggests he followed the explicit instructions for perfecting an appeal, as provided by EOUSA in the April 28, 2011 letter, see Dkt.

---

[7]In 2009 and 2011, Plaintiff was able to perfect administrative appeals from actions taken by the FBI on his FOIA request.  See Dkt. # 38-2, Exs. E, G, H, I.

# 66-3, Ex. E.  It appears Plaintiff proceeded to amend his complaint to add claims against EOUSA rather than pursue an administrative appeal.

In seeking summary judgment, counsel for Defendants states that "[a]s a consequence of the Plaintiff's refusal to pay fees" and his failure to file a "timely administrative appeal, he has no legally cognizable claim against EOUSA." See Dkt. # 66 at 23. The Court agrees. Plaintiff's failure to file an administrative appeal deprives the Court of the benefit of the agency's experience and expertise. See Wilbur v. C.I.A., 355 F.3d 675, 677 (D.C. Cir. 2004). Therefore, Plaintiff's second amended complaint fails to state a claim against Defendant EOUSA as a result of his failure to exhaust administrative remedies. For that reason, the Court will not consider whether EOUSA's release of documents to Plaintiff complied with the requirements of FOIA.

## 2.  Searches were adequate

According to Argall's Declaration, the FBI's search found only one main file maintained by the Oklahoma City Field Office, file 273-OC-65512. Initially, the FBI determined that because the material requested by Plaintiff was contained in an investigative file, the material was exempt from disclosure under 5 U.S.C. § 552(b)(7)(A).  At the time of Plaintiff's initial request, the file was still part of a pending criminal investigation.  See Dkt. # 66-1 at ¶ 23. However, the FBI later determined that the exemption provided under § 552(b)(7)(A) "went away subsequent to the filing of the litigation." See Dkt. # 66-1 at ¶ 14.  As a result, the agency sent a release of documents to Plaintiff. Those documents are provided as part of the record in this case.  See Dkt. # 38, Ex. J.  In addition, the agencies involved in the review of the material withheld certain documents as duplicates or as exempt from disclosure under 5 U.S.C. § 522(b)(2), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  See Dkt. # 66-1 at ¶¶ 27, 28; Dkt. # 66-3 at ¶ 12; Dkt. # 66-4 at ¶¶ 3-19.

14

According to Cunningham's Declaration, DOJ/CRM searched its central index of records, its most comprehensive system of records, and found no records pertaining to Plaintiff.  See Dkt. # 66-2 at ¶ 11. Plaintiff was advised that he could send a request directly to EOUSA. Subsequently, DOJ/CRM conducted a search of additional CRM Sections on an expedited basis. Id. at ¶ 14. No additional records were found. Id. at ¶ 15. DOJ/CRM also searched its Electronic Surveillance Unit (ESU) records, but located no records pertaining to Plaintiff. Id. at ¶ 18.

According to Chisholm's Declaration, the ATF reviewed documents referred by the FBI and conducted a search of its Treasury Enforcement Communications System (TECS) and its case management system (N-Force) using Plaintiff's name for the period of 2002-2008, but found no responsive records. See Dkt. # 66-4 at ¶¶ 6, 20-22.

According to King's Declaration, the IRS's Office of Disclosure reviewed documents referred by EOUSA and the FBI. See Dkt. # 66-5 at ¶¶ 5 and 7. All 58 pages referred by EOUSA were released to Plaintiff and all 12 pages referred by the FBI were released to Plaintiff. Id. at ¶¶ 5, 6, 10.  The IRS has no record of any written request for records from Plaintiff. Id. at ¶ 4.

In response to Defendants' motion for summary judgment, Plaintiff challenges the adequacy of the searches undertaken by Defendants.  See Dkt. # 72.  However, upon review of the Declarations provided in support of Defendants' second motion for summary judgment and under the facts of this case, the Court finds that the searches described in the Declarations were reasonably calculated to uncover all relevant documents.  See Trentadue v. F.B.I., 572 F.3d 794, 797-98 (10th Cir. 2009) (stating that "the focal point of the judicial inquiry is the agency's search process, not the outcome of its search. The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate, which is

determined under a standard of reasonableness, and is dependent upon the circumstances of the case" (brackets, ellipses, internal quotation marks omitted; emphasis in original)).

### 3.  Documents were properly withheld under PA and FOIA exemptions

Plaintiff also alleges that Defendants "have acted in bad faith to suppress requested documents by failing to impartially weigh and balance the public interest in document release," and that "Defendants have failed to describe with particularity specific documents subject to exemption and to establish in detail the reason and justification for such claims of exemption." See Dkt. # 69. Plaintiff provides his Affidavit stating that "the Brady evidence which proves that I did not commit the crimes of conviction and will establish exculpation and mitigation is contained within the investigatory files of the FBI, DEA, U.S. Attorney's Office, BATF, and Grand Jury deliberations and are sought because there exists a significant public interest a) in exonerating a +79 year old man who did not commit the crime for which he is punished, and b) casting the light of day upon unethical conduct of Government official and agents." See Dkt. # 69, attached Affidavit at ¶ 5.

The FBI cites to Section (j)(2) of the PA as the basis for withholding records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ." See Dkt. # 66-1 at ¶ 25. Argall states that records responsive to Plaintiff's request were compiled as a result of the FBI's criminal investigations into Plaintiff's criminal activity and were, therefore, exempt from disclosure under 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.96 (2003). Id. at ¶ 26.  Nonetheless, the FBI processed Plaintiff's request for records under "the access provisions of the FOIA to achieve maximum disclosure." Id.

The Court finds that, for the reasons discussed below, Plaintiff has failed to demonstrate that Defendants' use of the FOIA exemptions to withhold information and documents was improper.

### a. Exemption (b)(2)

Following the Supreme Court's decision in <u>Milner v. Dep't of Navy</u>, 131 S. Ct. 1259 (2011), the application of Exemption 2 is narrowed to apply only to employee relations and human resources records. Argall cites Exemption (b)(2) to allow non-disclosure of internal agency matters, specifically secure/non secure telephone and facsimile numbers of FBI personnel. Plaintiff offers no objection to the application of this exemption. In the absence of an objection by Plaintiff, the Court finds that this information was properly redacted.

### b. Exemption (b)(3)

The Government withheld documents based on application of Exemption (b)(3), providing for non-disclosure of information protected by statute. In this case, the information withheld by the FBI was related to the Grand Jury and is protected by Fed. R. Crim. P. 6(e). Argall states that "the names and identifying information of individuals subpoenaed to testify before the Federal Grand Jury were withheld pursuant to this exception." <u>See</u> Dkt. # 66-1 ¶ 33. Information withheld by the ATF under exemption (b)(3) involved firearms transaction records. <u>See</u> Dkt. # 66-4 at ¶¶ 7-11.[8]  In response to the second motion for summary judgment, Plaintiff offers no objection to the Defendants' reliance on Exemption (b)(3) to withhold information related to the Grand Jury or to Firearms Transactions Records. <u>See</u> Dkt. #s 69, 72. In the absence of an objection by Plaintiff, the Court finds that this information was properly withheld under Exemption (b)(3).

---

[8]In relying on Exemption (b)(3), ATF cites to Public Laws 108-447 and 111-117 which prohibit the release of Firearms Trace Reports, derived from the contents of the Firearms Trace System Database, to the public. <u>See</u> Dkt. # 66-4 at ¶¶ 9, 10.

### c.  Exemption (b)(5)

Exemption 5 applies to "matters that are . . . inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To qualify under this exemption, a document must be the product of a government agency, and must "fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." <u>Dep't of the Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001). The Supreme Court recognizes the attorney work-product and the deliberative process privileges as falling under the ambit of this exemption. <u>Id.</u>

In his Declaration, Argall states that "[t]he general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions, or recommendations may properly be withheld." (Dkt. # 66-1 at ¶ 35).  Argall explains that the redactions made pursuant to Exemption (b)(5) concern two (2) documents, an affidavit of an FBI agent[9] and an application for a court order.[10]  Both documents were "predecisional and deliberative in nature."  (Dkt. # 66-1 at ¶ 36).  They were withheld because "they consist of preliminary opinions, evaluations, and comments of FBI staff, and because release of these exempted material[s] would chill the full and frank discussion between agency personnel

---

[9]Argall states that the nine page affidavit, dated May 19, 2004, contained the Special Agent's account of Plaintiff's criminal investigation and displays "corrective markings and comments" which are "predecisional and deliberative" in nature. <u>See</u> Dkt. # 66-1 at ¶ 36.

[10]The application for a court order, dated March 11, 2004, was a draft of an order to be filed in Osage County District Court, and includes "information and language that is not present in the final document filed with the court." <u>See</u> Dkt. # 66-1 at ¶ 36.

regarding agency decisions . . . ." Id. at ¶ 37.  In response to the motion for summary judgment, Plaintiff argues that the documents withheld under Exemption (b)(5) may contain information concerning "whether law enforcement made any search or conducted any investigation as to the whereabouts of Kenneth Jones." (Dkt. # 72 at 20). However, Plaintiff's argument does not controvert Defendant's demonstration that the information was subject to the exemption.  Therefore, the Court finds that this information was properly redacted and/or withheld.

### d.  Exemption (b)(7)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); see F.B.I. v. Abramson, 456 U.S. 615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes and that the material satisfies the requirements of one of the subparts of Exemption 7. See Pratt v. Webster, 673 F.2d 408, 413 (D.C. Cir. 1982). The Tenth Circuit Court of Appeals has endorsed the "per se rule" for determining whether materials have been compiled "for law enforcement purposes." See Jordan v. Dep't of Justice, 668 F.3d 1188, 1197 (10th Cir. 2011). Under that rule, "all records and information compiled by an agency, as defined in the FOIA, see 5 U.S.C. §§ 551(1), 552(f)(1), whose primary function is law enforcement, are 'compiled for law enforcement purposes' for purposes of Exemption 7." Id. at 1197 (footnotes omitted). The FBI is a law enforcement agency. See, e.g., Irons v. Bell, 596 F.2d 468, 473 (1st Cir. 1979). Similarly, Chisholm states that the ATF is responsible for "enforcing Federal Firearms laws" and that the records reviewed for disclosure in this case were created by ATF in accordance with ATF's law enforcement function. See Dkt. # 66-4 at ¶ 12.  Thus, the records for which Defendants invoked

Exemption 7 were "compiled for law enforcement purposes." In this case, Argall asserts in his Declaration that the withheld information, if disclosed, "could reasonably be expected to jeopardize currently active criminal investigations and cause unwarranted and clearly unwarranted invasion of the personal privacy interests of third parties." (Dkt. # 66-1 at ¶ 38).

### i. Exemptions (b)(6) and (b)(7)(C)[11]

Argall states that FBI information was withheld based on Exemptions (b)(6) and (b)(7)(C). See Dkt. # 66-1.   ATF also withheld information concerning third parties under Exemption (b)(7)(C).   See Dkt. # 66-4 at ¶¶ 13-19.  Under § 552(b)(6), information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" is exempted from disclosure. Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "To determine whether Exemption 7(C) applies, [courts] 'balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information.'" Sussman v. United States Marshals Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992)); see also Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1205 (D.C. Cir. 1991). "[D]ue to the sensitive nature of law enforcement records and the greater privacy interest in

---

[11]Argall states that, because privacy interests are balanced against the public's interest in disclosure under both exemptions, the practice of the FBI is to provide analyses of Exemptions (b)(6) and (b)(7)(C) conjointly.

such records, the burden on an agency seeking protection of Exemption 7(C) is less than it is for Exemption 6 protection, as the agency need only show a reasonable likelihood of unwarranted invasion of personal privacy." Voinche v. F.B.I., 412 F.Supp.2d 60, 68 (D. D.C. 2006).

Defendants acknowledge that they are required "to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure." See, e.g., Dkt. # 66-1 ¶ 41.  Argall states in his Declaration that upon examination of the information withheld, it was determined that individual privacy rights outweighed the public interest in disclosure. Id. Information withheld under these exemptions include names and/or identifying information of FBI Special Agents; names and/or identifying information of non-FBI federal law enforcement and employees, specifically including a United States Marshal Service employee, a Federal Correctional Institution employee, and an investigator for the New Hampshire Attorney General's Office; names and/or identifying information of third parties of investigative interest; names and/or identifying information of state or local law enforcement employees, specifically including the Oklahoma City District Attorney's Office, the Oklahoma Bureau of Narcotics and Dangerous Drugs, and the Osage County Sheriff's Department, who aided the FBI in conducting the investigation of Plaintiff's illegal activities; names and/or identifying information concerning third parties who provided information to the FBI; and names and/or identifying information concerning third parties merely mentioned. Id. at ¶¶ 42-51.  ATF also withheld documents relating to third parties. See Dkt. # 66-4 at ¶¶ 13-19.

In response to the motion for summary judgment, Plaintiff argues that application of Exemption (b)(6) "should only be employed when the privacy interest at stake outweighs the public interest in disclosure, always tilting the balance (of disclosure interest against privacy interest) in favor of disclosure." See Dkt. # 72 at 17. He also correctly states that "the only public interest

21

relevant for the purpose of Exemption 7(C) of the Freedom of Information Act is one that focuses on the citizen's right to be informed about what their Government is up to." Id. at 14.  However, "[i]f the asserted public interest is government wrongdoing, then the requester must 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" Boyd v. Criminal Div. of the United States Dep't of Justice, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing National Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004)). Plaintiff does not provide any factual allegations, and certainly no compelling evidence, to show that the withheld information is necessary to prove government impropriety. Nor has Plaintiff asserted a public interest of such significance that it outweighs the privacy interests of the third parties mentioned in the records responsive to Plaintiff's FOIA requests.   As a result, Plaintiff has failed to controvert Defendant's demonstration that the information was subject to the exemptions. Therefore, the Court finds that the agencies' decisions to withhold the names of and identifying information about law enforcement officers, witnesses, persons of investigative interest, and other third parties whose names happen to appear in these law enforcement records were proper. See Holt v. D.O.J., 734 F.Supp.2d 28, 45 (D. D.C. 2010). This information was properly withheld under Exemptions (b)(6) and (b)(7)(C).

### ii.  Exemption (b)(7)(A)

Argall states in his Declaration that Defendant FBI withheld information based on Exemption (b)(7)(A). Under § 552(b)(7)(A), "records or information compiled for law enforcement purposes" are exempt, but only to the extent that production of such records "could reasonably be expected to interfere with enforcement proceedings." Defendant explains that Plaintiff's investigative file contains information on a third party of interest who is currently in fugitive status

22

and that release of eight pages of documents contained in the file "would likely endanger an ongoing investigation as to the apprehension of certain individuals who have yet to be sentenced." (Dkt. # 66-1 ¶ 54).  In response to the second motion for summary judgment, Plaintiff asserts that "Exemption 7(A) only justifies withholding records compiled for law enforcement purposes for a limited time while an investigation is ongoing . . . Plaintiff's investigation is closed." (Dkt. # 72 at 21).  Plaintiff has failed to provide factual allegations suggesting that the "third party of interest" is no longer in fugitive status and that release of the withheld information would not endanger an ongoing investigation.  As a result, Plaintiff has failed to controvert Defendant's demonstration that the information was subject to the exemption.  Therefore, the Court finds that this information was properly withheld.

### iii.  Exemption (b)(7)(D)

Both the FBI and the ATF cite to Exemption (b)(7)(D) as a basis for withholding certain records and information. See Dkt. # 66-1 at ¶ 57; Dkt. # 66-3 at ¶ 12. Under § 552(b)(7)(D), "records or information compiled for law enforcement purposes" are exempt, but only to the extent that production of such records "could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source."  Based on Exemption (b)(7)(D), Argall states that the FBI withheld the name and/or identifying information of certain commercial/private companies which provided information under an expressed assurance of confidentiality during the course of the joint FBI, OBNDD, and

23

OSBI investigation into Plaintiff's criminal activities. In response, Plaintiff correctly states that "Exemption 7(D) applies only when the particular source spoke with an understanding that communications would remain confidential." <u>See</u> Dkt. # 72 at 16. However, he fails to cite any fact suggesting that the information was improperly withheld because it was not provided under an understanding that the communications would remain confidential. As a result, Plaintiff has failed to controvert Defendant's demonstration that the information was subject to the exemption. Therefore, the Court finds that this information was properly withheld.

### iv.  Exemption (b)(7)(E)

The FBI also withheld records and information under Exemption (b)(7)(E). Under § 552(b)(7)(E), "records or information compiled for law enforcement purposes" are exempt, but only to the extent that production of such records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Argall explains in his Declaration that any "effectiveness rating" contained on forms FD-515, used by FBI Special Agents to report investigative accomplishments, has been redacted pursuant to Exemption (b)(7)(E). <u>See</u> Dkt. # 66-1 at ¶ 60. Plaintiff offers no objection to the application of this exemption. In the absence of an objection by Plaintiff, the Court finds that this information was properly redacted.

### 4.  Segregability

Lastly, the Court has reviewed the Defendants' declarations and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." <u>Vaughn v. Rosen</u>, 484 F.2d 820, 827 (D.C. Cir. 1973).

24

*CONCLUSION*

The Court finds Plaintiff has failed to controvert Defendants' evidence that the searches pursuant to his FOIA requests were adequate. Nor has Plaintiff set forth any basis for the Court to find that the Declarations provided in support of Defendants' second motion for summary judgment are not to be accorded a presumption of good faith. The FOIA requires an agency to search adequately its own records. The Court finds Defendants conducted an adequate search and provided non-exempt records requested by Plaintiff. The pleadings and other filings show no genuine issue as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.   Plaintiff's motion to file a corrected brief (Dkt. # 71) is **granted**. Plaintiff's corrected brief in support of his response to Defendants' motion for summary judgment (Dkt. # 72) shall remain filed of record.

2.   Defendants' second motion for summary judgment (Dkt. # 66) is **granted**.

3.   A separate judgment shall be entered in favor of Defendants.

DATED THIS 20th day of August, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT